UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MATTHEW THOMPSON, ) | |
| RODNEY THOMPSON, ) | |
| LEGACY MOUNTAIN RESORT, INC., ) | |
| THE PRESERVE RESORT, INC., and ) | |
| MAJESTIC MOUNTAIN VACATIONS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.: 3:10-CV-284 |
| ) | (VARLAN/GUYTON) |
| KENNETH HAYES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on plaintiffs' Motion for Temporary Restraining Order [Doc. 1-1], in which plaintiffs request that this Court issue a temporary restraining order or, in the alternative, a temporary injunction after a hearing.[1] After removing the case to this Court, defendant filed a response in opposition to the motion [Doc. 3]. Plaintiffs filed a reply, [Doc. 4], which defendant moved to strike [Doc. 5]. The Court then held a hearing on the motions [*see* Doc. 13]. The motion for a preliminary injunction and the motion to strike are now ripe for the Court's consideration.

---

[1] Plaintiffs' complaint was originally filed in Tennessee state court [*see* Doc. 1-1]. It sets forth a claim for relief under Tennessee Rule of Civil Procedure 65 [*see id.*]. The Court, however, construes plaintiffs' request for injunctive relief as one for issuance of a preliminary injunction under Federal Rule of Civil Procedure 65(a) and refers to plaintiffs' request as such throughout this memorandum opinion and order.

**I.   Background**

Plaintiffs filed the complaint and motion for a temporary restraining order in this case in the Chancery Court for Sevier County, Tennessee [Doc. 1-1]. The case was removed to this Court on June 29, 2010 [*see* Doc. 1]. In their complaint, plaintiffs allege that plaintiffs Matthew Thompson and Rodney Thompson (together, the "Thompsons") both are residents of Knox County, Tennessee, and that defendant Kenneth R. Hayes is a resident of Montgomery County, Alabama [Doc. 1-1, ¶¶ 2, 3, 7]. The Thompsons and defendant all are shareholders of plaintiff Legacy Mountain Resort, Inc. ("Legacy"), The Preserve Resort, Inc. ("The Preserve") and Majestic Mountain Vacations, Inc. ("Majestic") (collectively, the "Corporations") [*Id.*, ¶¶ 16, 17, 18]. The Thompsons each own 37.5% of the shares in each Corporation and defendant owns 25% of the shares in both Legacy and The Preserve as well as 12.5% of the shares in Majestic[2] [*Id.*]. The Corporations are corporate residents of Tennessee with their principal place of business located in Sevierville, Tennessee [*Id.*, ¶¶ 4, 5, 6].

On March 18, 2004, the Thompsons entered into a "Letter of Understanding" with defendant pursuant to which the parties agreed to form Majestic [*Id.*, ¶ 9]. On June 10, 2005, the Thompsons entered into two additional letters of understanding with defendant pursuant to which the parties agreed to form Legacy and The Preserve [*Id.*, ¶ 11]. Majestic was incorporated in Tennessee on April 28, 2004, and was created to be a cabin management

---

[2] Bryan Kendrick, not named as a party to this action, owns the remaining 12.5% of the shares in Majestic [Doc. 1-1, ¶ 18].

company for a variety of cabins in the Smoky Mountain area; The Preserve was registered in Tennessee on February 28, 2005, and was created to manage the cabins in The Preserve Resort; and Legacy was registered in Tennessee on January 5, 2006, and was created to manage the cabins in the Legacy Mountain Resort [*Id.*, ¶¶ 13, 14, 15].

Each letter of understanding defined specific roles and duties for each of the parties, including that the parties would "establish a business entity" and "enter into a business for the purpose of managing, marketing, soliciting, [and] providing reservations and housekeeping-guest services for overnight rentals in the Sevier County, Tennessee area" [*Id.*, ¶¶ 10, 12]. Pursuant to the section entitled "RESPECTIVE OBLIGATIONS OF THE PARTIES HERETO," defendant, in particular, was obligated to

> use due diligence to provide cabin rentals as the same are constructed through Legacy Homes or any other entity they are affiliated with and will encourage all of [defendant's] home purchaser (sic) to deal with [the Corporations] for their rental services, promoting the rental services to any of their customers in any way possible within the bounds of good sound ethical business practices.

[*Id.*, ¶ 44]. Defendant also was obligated to place any cabins which he already owned, which his construction company had already completed, or which he had otherwise already sold in the respective resorts under the management of the Corporations [*Id.*, ¶ 19]. The Thompsons were tasked with running the day-to-day operations of the Corporations [*Id.*, ¶ 19].

Plaintiffs allege that the Corporations collect certain percentages of rental income from such cabins for managing, renting and maintaining the cabins, and that such constitutes the primary source of revenue for the Corporations [*Id.*, ¶ 20]. Although plaintiffs aver that the Corporations conducted business successfully for a number of years, they also allege that

3

changes recently were made in terms of the compensation paid to the managers [*Id*., ¶ 21]. Plaintiffs further aver that, in response to such changes, defendant mailed letters to all cabin owners at Legacy Mountain Resort and The Preserve on May 10, 2010 and May 14, 2010, respectively [*Id.*, ¶ 22].

According to plaintiffs, the May 10 and May 14 letters encourage the owners of the cabins to approach the Corporations and demand that the Corporations lower the percentage of the fee taken for managing, renting and maintaining the cabins in violation of the letters of understanding [*Id.*, ¶¶ 22, 23]. In addition, plaintiffs allege that the letters suggest that the Corporations are not "aggressively market[ing]" the cabins and that owners should seek assistance from other management companies, which plaintiffs also claim violates the letters of agreement [*Id*., ¶ 26]. Finally, plaintiffs allege that the letters notified the cabin owners that the Legacy Mountain Amenities Group and The Preserve Resort Amenities Group–of which defendant is a member, and for which defendant is a manager–had planned to accept payment for services from any cabin management company even through, previously, very few management companies were permitted to pay for and use the amenities at the cabins [*Id.*, ¶¶ 27, 28]. They aver that because the Corporations were among the few management companies permitted to use these amenities, the loss of the semi-exclusive ability has made the Corporations less marketable to cabin owners [*Id.*, ¶ 29].

According to plaintiffs, defendant also used these letters to disclose privileged information pertaining to the revenue and profits of the Corporations as well as imply that defendant was receiving preferential treatment from the Corporations as a result of

defendant's business relationship with the Thompsons [*Id.*, ¶ 24, 25]. Plaintiffs allege that, as a result of the letters, several cabin owners have contacted the Corporations demanding lower fee percentages and threatening to withdraw from the Corporations' services entirely [*Id.*, ¶ 38]. They aver that the Corporations are being forced to reduce fee percentages to prevent the loss of business [*Id.*, ¶ 39].

On June 1, 2010, defendant distributed a letter to the owners of the cabins at Legacy Mountain Resort [*Id.*, ¶ 30]. Plaintiffs allege that, in this letter, defendant made statements to the effect that Matthew Thompson was distributing documents that contained lies, intentionally misled owners of the cabins, and were intended to cause fear and doubt [*Id.*, ¶¶ 31, 58].

On the basis of these allegations, plaintiffs bring three claims: (1) intentional interference with existing business relationships; (2) breach of contract; and (3) defamation [*Id.*, ¶¶ 32-63]. Plaintiffs also request that the Court enter injunctive relief [*see id.*]. The Court has carefully considered the parties' filings and the arguments raised at the hearing in light of the applicable law. For the reasons that follow, the motion for a preliminary injunction is denied. The motion to strike is denied as moot.

## II.  Plaintiffs' Motion for Injunctive Relief

Plaintiffs have requested that the Court grant an order restraining defendant from (1) "[t]aking any action that results in the loss of business of the Corporation;" (2) [c]ommunicating with the owners of any Cabins with business relationships with the Corporations;" and (3) [c]ommunicating with any prospective owners of any cabins

5

negotiating with the Corporations for management agreements" [Doc. 1-1]. For the reasons set forth below, the Court denies plaintiffs' request.

### A. Standard of Review

A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citation omitted). One "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted).

When deciding a motion for a preliminary injunction, a district court must consider four factors: (1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits as to each claim. *Id.* (citation omitted); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (citing *PACAAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). Courts should make findings as to each factor unless a discussion of fewer factors will resolve the case. *G&V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994). No single factor is dispositive, *County Sec. Agency v. The Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002), but a finding that there is no likelihood of irreparable harm or no likelihood of success on the merits is often fatal, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

"[W]hen First Amendment rights are implicated," however, "the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *County Sec. Agency*, 296 F.3d at 485. "[I]n a case of a prior restraint on pure speech," for example, "the hurdle is substantially higher [than in an ordinary preliminary injunction case]: publication must threaten an interest more fundamental than the First Amendment itself." *Id.* "'[P]rior restraints of expression [bear] a heavy presumption against [their] constitutional validity,' and a party who seeks to have such a restraint [imposed] 'thus carries a heavy burden of showing justification for the imposition of such a restraint.'" *Id.* (quoting *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)). "A prior restraint is permissible if the speech poses 'a grave threat to a critical government interest or to a constitutional right.'" *Id.* (quoting *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996)). "Temporary restraining orders and permanent injunctions–i.e., court orders that actually forbid speech activities–are classic examples of prior restraints." *County Sec. Agency*, 296 F.3d at 485.

**B.     Analysis**

With respect to plaintiffs' request to enjoin defendant's speech, the Court finds that plaintiffs have failed to demonstrate that defendant's speech "poses 'a grave threat to a critical government interest or to a constitutional right'" such that the imposition of a prior restraint in the form of a preliminary injunction would be appropriate. As defendant correctly explains, plaintiffs' proffered basis for the issuance of injunctive relief to prevent

defendant from communicating with cabin owners is the alleged harm these communications have done and will do to plaintiffs' business interests and their reputations. Such interests cannot override defendant's First Amendment rights. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971) ("No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."). Indeed, to the extent that the speech at issue is defamatory, the usual remedy for such is an action for damages. *See Karhani v. Meijer*, 270 F. Supp. 2d 926, 930 (E.D. Mich. 2003).

With respect to any other conduct plaintiffs seek to enjoin, the Court finds that each factor of the preliminary injunction analysis weighs against the issuance of such.

### 1. Irreparable Harm

Plaintiffs have identified various ways in which they will be harmed if an injunction is not issued. As a general matter, plaintiffs' harm may be categorized into three types: (1) loss of management fees as a result of cabin owners who renegotiate lower management fees with the Corporations; (2) loss of management fees as a result of cabin owners leaving the Corporations for other management companies; and (3) reputational harm [*see* Docs. 1-1, 4]. Additionally, plaintiffs claim that such damages are "unknowable" [*see* Doc. 4]. Defendant, on the other hand, asserts that plaintiffs' injuries are economic and fully compensable by money damages [*see* Doc. 3].

During oral argument, plaintiffs' counsel conceded that damages are calculable with respect to the harm caused by those cabin owners who had already renegotiated their

management fees with plaintiffs. Likewise, the Court finds that damages are calculable if and when additional cabin owners renegotiate their management fees in the future. As a harm is not irreparable "if it is fully compensable by money damages," *Overstreet*, 305 F.3d at 578, the Court finds that any harm related to reductions in management fees does not warrant injunctive relief.

With respect to the alleged harm relating to those cabin owners who may leave the Corporations for other management companies, the Court finds that such harm is speculative as plaintiffs failed to demonstrate that any cabin owners actually left the Corporations to do business with other management companies [*see* Docs. 4, 4-1]. A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citations omitted). *See also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (stating that irreparable harm "must be both certain and immediate, rather than speculative or theoretical") (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citation omitted). Accordingly, the Court finds that any harm related to cabin owners leaving the Corporations for other management companies does not warrant injunctive relief.

Finally, plaintiffs claim they have suffered and will continue to suffer reputational harm as a result of defendant's actions absent an injunction. Although this Court has

recognized that injury to reputation is not fully compensable by money damages, *see Doherty v. City of Maryville*, No. 3:07-cv-157, 2009 WL 2823670, at *4 (E.D.T.N. Aug. 28, 2009) (citations omitted), plaintiffs' allegations of reputational harm are not supported by the record. Plaintiffs submitted no evidence to the Court demonstrating their reputation has been diminished by defendant's actions, and, given the plethora of negative reviews posted online by cabin renters as well as the low rating given to the management companies by the Better Business Bureau, both of which were submitted by defendant, reputational harm is speculative. Accordingly, the Court finds that plaintiffs are not *likely* to suffer irreparable harm in the absence of an injunction and that any harm plaintiffs may suffer in the absence of an injunction may be fully compensable by money damages. This factor, therefore, weighs in favor of defendant.

### 2. Whether Issuance of an Injunction Would Cause Substantial Harm to Others

The Court finds that issuance of an injunction would cause substantial harm to others. As discussed, issuing an injunction in this case would impinge upon defendant's First Amendment rights. These rights are heavily protected. *See NLRB v. Ford Motor Co.*, 114 F.2d 905, 914 (6th Cir. 1940) (quoting *Palko v. Conn.*, 302 U.S. 319, 327 (1937)) ("[F]reedom of speech . . . 'is the matrix, the indispensable condition, of nearly every other form of freedom.'"). Accordingly, this factor weighs in favor of defendant.

### 3. Whether the Public Interest Would be Served by the Issuance of an Injunction

The Court recognizes that there is a public interest in identifying and correcting harmful business practices like those alleged by plaintiffs in their complaint as well as those alleged by defendant in his letters. Nevertheless, the Court finds that the public interest would not be served by the issuance of an injunction because there is a public interest in protecting First Amendment rights. Accordingly, this factor, although slightly, weighs in favor of defendant.

### 4. Likelihood of Success on the Merits

In order to establish a likelihood of success on the merits, plaintiffs must demonstrate "more than a mere possibility of success." *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 683 (W.D. Tenn. 2009) (citing *Six Clinics Holding Corp. II v. Cafcomp Sys.*, 119 F.3d 393, 402 (6th Cir. 1997)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberative investigation. *Id.* However, "[t]he showing necessary to establish a likelihood of success on the merits varies inversely with the other three factors." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338, at *3 (E.D. Tenn. Aug. 15, 2006) (citing *In re DeLorean*, 755 F.3d 1223, 1229 (6th Cir. 2000)).

As the following explains, plaintiffs have failed to demonstrate more than a mere possibility of success for each of their claims. This factor thus weighs in favor of defendant.

#### a. Intentional Interference with Business Relationships

Pursuant to Tennessee law, the elements of an intentional interference with business relationships claim are (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and (5) damages resulting from tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis in original). Although the Court declines to opine on the ultimate viability of plaintiffs' claim for intentional interference with existing business relationships, it finds that plaintiffs have not met their burden of demonstrating a strong likelihood of success for two reasons.

First, plaintiffs allege that the existing business relationships that defendant interfered with are those between the Corporations and the cabin owners, which they have pleaded are contractual [Doc. 1-1, ¶ 45]. Defendant argues that plaintiffs "cannot sue for 'interference with existing business relationships,' because that tort only applies when no contract yet exists" [*see* Doc. 3]. Indeed, in recognizing the existence of a claim for intentional interference with business relationships, the Tennessee Supreme Court adopted comment c of Section 766B of the Restatement (Second) of Torts, which provides that those "relationships not amounting to a formal contract" are included within the application of the tort. *See id.* at 699-701 n.4 (quoting and adopting Restatement (Second) of Torts § 766B &

cmt. c (1979)). *See also* Restatement (Second) of Torts § 766B cmt. a ("This Section is concerned only with intentional interference with prospective contractual relations, not yet reduced to contract. The rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff is stated in § 766."). The cases cited by plaintiffs in support of their argument that the tort may apply where the existing business relationship is contractual do not sufficiently demonstrate such is the case.

Second, even if the tort applies where the business relationship is contractual, plaintiffs have not yet demonstrated that defendant acted with an improper motive or through improper means. Plaintiffs conclusorily allege that defendant acted with improper motive and only "belie[ve] that the discovery process will reveal that Defendant had improper and malicious intentions when he contacted Plaintiffs' customers, namely to persuade the customers to terminate their business relationships with Plaintiffs and the related entities" [Docs. 1-1, 3]. Plaintiffs provided neither factual nor legal support for their allegations of improper motive or means. Accordingly, the Court finds that plaintiffs have failed to demonstrate a strong likelihood of success with respect to their claim for intentional interference with existing business relationships.

### b. Breach of Contract

The elements of a breach of contract claim in Tennessee are (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. *C&W Asset Acquisition, LLC v. Oggs*, 230

S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). Plaintiffs have failed to demonstrate a strong likelihood of success with respect to the final element.

Plaintiffs' counsel represented at the hearing that plaintiffs are bringing this claim both individually and on the Corporations' behalf. Pursuant to Tennessee law, a corporation and its stockholders are distinct legal entities and "[e]ven a stockholder who is the sole shareholder of a corporation may not bring a suit to right a wrong done to the corporation." *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1988) (citations omitted) (finding that, even though as a practical matter the damage caused by defendant to a corporation directly affected plaintiff shareholders, plaintiff shareholders were not entitled to bring a cause of action to recover damages sustained by the corporation). Rather, "[s]tockholders may bring an action individually to recover for an injury done directly to them [if the injury is] distinct from that incurred by the corporation and [arises] out of a special duty owed to the shareholders by the wrongdoer." *Id.* (citations omitted). *See also Cato v. Mid-America Dist. Ctrs., Inc.*, No. 02A01-9406-CH-00149, 1996 WL 502500, at *5-6 (Tenn. Ct. App. Sept. 6, 1996) (stating that "a direct action will lie where a shareholder has suffered individual injury, such as where the shareholder has been denied voting rights or . . . the right to inspect the corporate books").

Plaintiffs argue that there is a special and distinct injury here because the alleged breach was to contracts to which the Thompsons are parties [*see* Doc. 4]. However, a review of plaintiffs allegations demonstrate that plaintiffs essentially equate the damage to the corporation with the damage to the Thompsons. For example, plaintiffs allege that

defendant's conduct has "result[ed] in the direct loss of revenue and profits to the Corporations and, consequently, [to] plaintiffs Matthew and Rodney Thompson as shareholders," as well as that defendant's actions reduced the marketability of the Corporations [Doc. 1-1, ¶¶ 49, 53]. It appears that any alleged special duty owed by defendant pursuant to the letters of understanding is to the Corporations and not the Thompsons individually. Accordingly, although the Court declines to opine on the ultimate viability of plaintiffs' claim, the Court cannot find that there is strong likelihood that they will succeed on their breach claim.

    **c.    Defamation**

Matthew Thompson argues that the letter sent by defendant on June 1, 2010 to all Legacy cabin owners "(1) contained lies, (2) intentionally misled owners of the Cabins, and (3) w[as] intended to cause fear and doubt" [Doc. 1-1, ¶ 58].[3] The Court has reviewed this letter and agrees with defendant's characterization of some of the statements contained therein as defendant's "opinion about [Matthew] Thompson's management and prior communications [to cabin owners], not objective facts" [Doc. 3]. Statements of opinion are not actionable. *See Orr v. Argus-Press Co.*, 586 F.2d 1108, 1115 (6th Cir. 1978) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)) ("A statement of opinion about matters which are publicly known is not defamatory . . . 'However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the

---

[3] The defamation claim relates only to the June 1, 2010 letter, and not to the May 10, 2010 letter or the May 14, 2010 letter [*see* Doc. 1-1, ¶¶ 57-63].

competition of other ideas.'"); *see also Nat'l Rifle Ass'n v. Dayton Newspapers, Inc.*, 555 F. Supp. 1299, 1305 (S.D. Ohio 1983) (quoting *Orr*).

Plaintiffs also submitted that a district court in the Western District of Tennessee found that "calling someone a liar or . . . untrustworthy . . . is sufficiently specific to imply that the victim has committed particular acts that society has determined to be improper" [Doc. 4 (citing *Rhea v. Dollar Tree Stores, Inc.*, No. 04-2254 ML/V, 2005 WL 2600213, at *11 (W.D. Tenn. Oct. 12, 2005)]. Although the Court recognizes this decision, at the hearing, defense counsel raised a truth defense to some of the statements in the letter. In particular, he argued that the misstatements of plaintiff to which defendant referred in his June 1, 2010 letter were in fact misstatements and were not fabrications. Truth is a defense to defamation in Tennessee. *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000). Thus, while the Court declines to opine on the ultimate viability of the defamation claim, it finds that plaintiff has failed to demonstrate the strong likelihood of success on the merits required before injunctive relief can issue.

## III. Defendant's Motion to Strike

Following the filing of plaintiffs' reply to defendant's response in opposition to the motion for injunctive relief, defendant filed a motion to strike the reply on the grounds that the reply was not timely filed and that the reply raises new matters that should have been included in a leading brief [*see* Doc. 5]. Defendant also filed four declarations from those cabin owners whose emails were attached to plaintiffs' reply [*see* Docs. 6-8, 10].

16

As the Court finds that preliminary injunctive relief is not appropriate in this case, *see supra* Part II, the Court denies defendant's motion to strike as moot.

## IV. Conclusion

For the reasons above, this Court finds that plaintiffs have failed to meet the high standard necessary for injunctive relief. Accordingly, plaintiffs' Motion for Temporary Restraining Order [Doc. 1-1] is **DENIED**. Defendant's Motion to Strike Plaintiffs' Reply to Defendant's Response to Motion for Temporary Restraining Order [Doc. 5] is **DENIED** as moot.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE